# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| CLARA SCHACK, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No: 7:19-cv-767 |
| | ) |
| PARALLON ENTERPRISES, LLC, | ) |
| | ) |
| and | ) |
| | ) |
| MONTGOMERY REGIONAL HOSPITAL, | ) |
| INC., | ) |
| Serve: C T Corporation System | ) |
| 4701 Cox Road Ste 285 | ) |
| Glen Allen, VA  23060-6808 | ) |
| | ) |
|    Defendants. | ) |

## AMENDED COMPLAINT

The above-named Plaintiff, Clara Schack, by counsel, states as her Amended Complaint against Defendants, Parallon Enterprises, LLC and Montgomery Regional Hospital, Inc. (hereinafter, collectively, "Parallon"), the following:

## PARTIES

1. Parallon Enterprises, LLC is a limited liability company doing business in the Commonwealth of Virginia and elsewhere.

2. Montgomery Regional Hospital, Inc. is a corporation doing business in the Commonwealth of Virginia and elsewhere.

3. At all times material hereto, Parallon Enterprises, LLC is and was a "person" within the meaning of Title VII, Section 701, 42 U.S.C. § 2000e(a). At all

1

times material hereto Parallon Enterprises, LLC was an "employer" within the meaning of Title VII, Section 701, 42 U.S.C. § 2000e(b).

4. At all times material hereto, Montgomery Regional Hospital, Inc., is and was a "person" within the meaning of Title VII, Section 701, 42 U.S.C. § 2000e(a). At all times material hereto Montgomery Regional Hospital, Inc. was an "employer" within the meaning of Title VII, Section 701, 42 U.S.C. § 2000e(b)

5. On information and belief, Parallon Enterprises, LLC and Montgomery Regional Hospital, Inc. at the times relevant, were joint employers, integrated employers, and/or apparent agents with respect to Ms. Schack.

6. Clara Schack is a female resident of the Commonwealth of Virginia and, at the times relevant, was an "employee" of Parallon Enterprises, LLC and/or Montgomery Regional Hospital, Inc. within the meaning of Title VII, Section 701, 42 U.S.C. § 2000e(f).

7. The claims against Montgomery Regional Hospital, Inc. relate back to the date of the original filing of the complaint in this matter pursuant to Federal Rule of Civil Procedure 15(c).

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this matter as it arises from the federal questions presented by Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act ("PDA") and the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008 ("ADA"). *See* 28 U.S.C. § 1331; 28 U.S.C. § 1343(a); 42 U.S.C. § 2000e-5(f); 42 U.S.C.

2

§ 12117(a).

9. This Court has jurisdiction over the state common law claims pursuant to 28 U.S.C. § 1367.

10. Due to its contacts within the Commonwealth of Virginia, Parallon avails itself to the jurisdiction of this Court. Venue is appropriate as the acts and/or omissions of Parallon from which the cause of action arises occurred in Montgomery County, Virginia, which is within the Western District of Virginia, Roanoke Division. *See* 28 U.S.C. § 1391(b)(2).

11. Plaintiff timely filed a charge with the U.S. Equal Employment Opportunity Commission (Charge No. 438-2019-00448) and received a Dismissal and Notice of Right to Sue dated August 19, 2019, which attached hereto as **Exhibit A**, and files this action within 90 days of receipt of that notice.

## II. FACTUAL BACKGROUND

12. On or about July 23, 2018, Ms. Schack became employed through Parallon at LewisGale Hospital Montgomery as a registrar in the patient access department.

13. During Ms. Schack's interview, on or about June 22, 2018, Ms. Schack notified Parallon that she could not work nights due to being enrolled in school at New River Community College, but that she was available during the weekends along with the weekdays that she was not in class.

14. Suzanne Caldwell, Director of Patient Access, stated that Ms. Schack would be scheduled Mondays 7am-12pm, Tuesdays 9am-7pm, and one weekend shift

3

on Saturday or Sunday, giving Ms. Schack a total of 23-25 hours per week. And, this was the schedule that Ms. Schack was given until she notified Parallon that she was pregnant.

15. On or about August 30, 2018, Ms. Schack told her supervisor and manager of her department, Ms. Caldwell, that she was 4-6 weeks pregnant.

16. On or about September 3, 2018, Ms. Schack was experiencing sharp and intense pain in her lower abdomen. Therefore, as directed by her OB/GYN, Dr. Zolovick, Ms. Schack went to the ER at LewisGale Hospital Montgomery. It was determined that Ms. Schack had an enlarged ovarian cyst.

17. On or about September 4, 2018, Ms. Schack reached out to her supervisor, Ms. Caldwell, stating that the ER doctor wanted her [Ms. Schack] to follow up with Dr. Zolovick on this day and, therefore, she may not make it into work.

18. On September 6, 2018, Ms. Schack experienced severe vomiting due to her pregnancy, in addition to the pain of her ovarian cyst. Ms. Schack missed work on September 6, 2018 due to the vomiting and pain but, again, contacted her supervisor as was required.

19. Thereafter, Ms. Schack continued to experience severe nausea and vomiting that lasted all day and night to the point she could not even keep clear liquids or saltine crackers down. The constant nausea and vomiting had a major negative impact on her everyday functioning, including eating, and caused her to miss work.

20. Ms. Schack was then diagnosed with Hyperemesis Gravidarum, which is a severe vomiting syndrome during pregnancy. Ms. Schack lost approximately 15

pounds in the month of September alone and the symptoms kept worsening.

21. Due to being very ill and having to miss more work than she anticipated, Ms. Schack decided to reach out to Ms. Caldwell concerning her absence of work.

22. Ms. Caldwell prompted Ms. Schack to speak with Harriett Spencer Bennett, Assistant Director of Human Resources for Parallon.

23. Ms. Bennett and Ms. Schack spoke on the phone on September 24, 2018 to discuss Ms. Schack's situation and potential reasonable accommodations.

24. Dr. Zolovick thereafter wrote Ms. Schack off work for a two-week period.

25. On or about October 5, 2018, Ms. Schack participated in a conference call with Ms. Bennett and Ms. Caldwell. During the conference call, Ms. Bennett stated that any absences between September 4, 2018 and October 3, 2018 would be excused based on Ms. Schack's medical condition.  Ms. Bennett further stated that Parallon was going to honor Dr. Zolovick's note requesting two weeks off for Ms. Schack as a reasonable accommodation, but that Ms. Schack was to return to work on October 16, 2018.

26. During the week of October 8, 2018, Ms. Schack's symptoms worsened. Ms. Schack was still losing weight and stayed dehydrated. Ms. Schack's doctor ordered, therefore, that Ms. Schack have a Central PICC Line IV placed in her right arm to receive fluids daily from home as well as IV Zofran for the nausea.

27. On or about October 11, 2018, Ms. Schack's PICC line was placed and she began to receive home health care once a week for a check-up and dressing change around the PICC line site.

28. On or about October 15, 2018, Ms. Schack noticed on Parallon's schedule

5

that she had been scheduled with longer work hours and night shifts. The night shifts were not in Ms. Schack's availability and working 9:00am-7:30pm was concerning as Ms. Schack had just started receiving fluids and still had difficulty functioning on a daily basis.

29. Ms. Schack, therefore, reached out to Ms. Caldwell on or about October 15, 2018 about her concerns and asked if her shift hours could be kept at 5.5-6 hours until her medical condition improved. The request was not granted.

30. Ms. Schack's request for an accommodation was not intended to be permanent and was directly related to her pregnancy related health issues, and only would last the duration of the same. Ms. Schack's son was born in April 2019.

31. While other employees, who were not pregnant or disabled, were able to receive the preferential hours and shifts that they requested, Ms. Schack was left with the long hours and was scheduled in the ER department working alone, which worsened Ms. Schack's condition.

32. Moreover, Ms. Schack was treated differently when she returned to work in October 2018. Employees refused to help Ms. Schack when she needed help in the ER, employees refused to pick up Ms. Schack's shifts, and Ms. Schack would always be last to go to lunch at 2:00 pm with no breaks in-between. Ms. Schack was also being singled out and nitpicked about everything at work. In fact, Ms. Schack was verbally disciplined for finding someone to cover her shift one day when she was too ill to work.

33. Then, Ms. Schack received an email from Ms. Caldwell on or about November 7, 2018 with a write-up attached that lodged numerous false accusations

towards Ms. Schack.

34. Ms. Schack thereafter called Ms. Bennett and reported the discriminatory write-up.

35. Ms. Bennett told Ms. Schack to reach out to Jennifer Gillespie in the Patient Access Department.

36. As instructed, Ms. Schack reached out to Ms. Gillespie on or about November 7, 2018 and told Ms. Gillespie everything that had occurred from the time Ms. Schack learned that she was pregnant, the medical conditions she developed thereafter, the mistreatment at work after she returned, and the letter of false accusations she had received. Ms. Gillespie stated that she understood Ms. Schack's frustrations and stated that the actions and treatment from Ms. Schack's supervisor and manager were uncalled for and that she was headed to the hospital within the next day and she would address the issue with them.

37. On or about November 9, 2018, Ms. Gillespie told Ms. Schack that there was a position open in the Medical Records Department and that she could make a lateral move to that position. Ms. Gillespie stated the job would be 9am-5pm, fulltime with benefits and more fitting for Ms. Schack's situation. Ms. Gillespie told Ms. Schack to fill out an application for the position and that she, Ms. Gillespie, would reach out to the director of that department and take care of the rest.

38. Based on Ms. Gillespie's request and representations, Ms. Schack filled out the application for the position in the Medical Records Department.

39. On or about Monday November 12, 2018, Ms. Gillespie advised

Ms. Schack to resign from the Patient Access Department and stated that Ms. Schack would receive the aforementioned job in the Medical Records Department. Ms. Schack believed what Ms. Gillespie said was true and, relying on those representations, resigned.

40. After Ms. Schack resigned, Ms. Schack received an email on or about November 13, 2018 from the Medical Records Department stating they had received Ms. Schack's application, but she did not get the job and they were choosing another candidate for the position.

41. Ms. Schack performed her duties faithfully, diligently, and with competence during the entire length of her employment with Parallon.

42. Upon information and belief, other employees who were not pregnant and/or who had not requested accommodations related to their pregnancies were permitted to participate in flexible work schedules and were not terminated and/or constructively terminated from employment.

43. Parallon unlawfully terminated and/or constructively terminated Ms. Schack's employment because of her sex and/or pregnancy and/or her disability, all in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act ("PDA") and the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008 ("ADA").

**COUNT I:  PREGNANCY DISCRIMINATION PURSUANT TO
TITLE VII / THE PREGNANCY DISCRIMINATION ACT**

44. Plaintiff incorporates by reference herein the preceding paragraphs of this Amended Complaint.

45. Ms. Shack is a female and is protected from sex discrimination by Title VII.

46. The Pregnancy Discrimination Act amends 42 U.S.C. § 2000e [section 701], Title VII of the Civil Rights Act of 1964, and prohibits discrimination on the basis of pregnancy, childbirth, or related medical conditions.

47. Specifically, 42 U.S.C. § 2000e (k) provides: "The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment- related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 2000e-2(h) of this title [section 703(h)] shall be interpreted to permit otherwise."

48. Parallon discriminated against Ms. Schack by treating her differently from and less preferably than similarly situated employees and subjecting her to discrimination on the basis of her pregnancy and/or related medical conditions, and other differential treatment on the bases of her sex.

49. Parallon violated federal law by permitting a work environment to exist that was discriminatory to Ms. Schack and by wrongfully terminating and/or constructively terminating Ms. Schack's employment.

50. Parallon would not have terminated and/or constructively terminated Ms. Schack's employment, or taken the other discriminatory actions against

Ms. Schack, but for Ms. Schack's sex. Alternatively, Ms. Schack's pregnancy was a motivating factor in Parallon's decision to terminate and/or constructively terminate Ms. Schack's employment.

51. Because the actions of Parallon's supervisory employees were taken within the scope of their employment, Parallon is responsible for their actions based upon the doctrine of *respondeat superior*.

52. As a direct and proximate result of the actions of Parallon, Ms. Schack has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

53. At all times material hereto, Parallon engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Ms. Schack so as to support an award of punitive damages.

54. The above-described acts by Parallon constitute sex and pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act ("PDA"), the Civil Rights Act of 1991 as codified under 42 U.S.C. §§ 2000e, *et seq*. ("Title VII").

## COUNT II: CLAIM FOR DISCRIMINATION IN VIOLATION OF THE ADA

55. Ms. Schack incorporates herein by reference the preceding paragraphs of this Amended Complaint.

56. At all times relevant to this Amended Complaint, Ms. Schack was a qualified individual with a disability, pursuant to the ADA.

57. Specifically, and at all times relevant, Ms. Schack suffered from a disability, specifically, Hyperemesis Gravidarum, which impaired several of Ms. Schack's daily life activities and/or functions including eating and working.

58. In the alternative, Ms. Schack was regarded by Parallon as having such impairments.

59. At all times relevant, Parallon perceived Ms. Schack as having a disability pursuant to the ADA.

60. At all times relevant, however, Ms. Schack could perform the essential functions of her job with or without an accommodation.

61. Ms. Schack performed her work at a satisfactory level and met or exceeded the legitimate business expectations of Parallon.

62. Ms. Schack revealed her disability to her supervisor and the Human Resources department at Parallon and requested the reasonable accommodation of time off and/or shorter workdays.

63. Parallon discriminated against Ms. Schack by refusing to appropriately engage in a dialogue with her regarding disability accommodations, denying Ms. Schack's accommodation request, treating Ms. Schack differently, and less favorably, than similarly situated employees, and terminating and/or constructively terminating her employment.

64. Parallon would not have terminated and/or constructively terminated Ms. Schack's employment, or taken the other discriminatory actions against her, but for Ms. Schack's disability and/or requests for reasonable accommodations.

65. Any reasons given by Parallon for its treatment of Ms. Schack were pretextual, as Ms. Schack's work performance was excellent.

66. Ms. Schack's termination and/or constructive termination from employment occurred under circumstances that raise a reasonable inference of unlawful discrimination based upon her disability and/or requests for accommodations.

67. As a direct and proximate result of Parallon's actions, Ms. Schack has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

68. At all times material hereto, Parallon engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Ms. Schack so as to support an award of punitive damages.

69. The above-described acts by Parallon and employees of Parallon constitute disability discrimination in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008 ("ADA").

## COUNT III: CLAIM FOR FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA

70. Ms. Schack incorporates herein by reference the preceding paragraphs of this Amended Complaint.

71. At all times relevant to this Amended Complaint, Ms. Schack was a qualified individual with a disability, pursuant to the ADA.

12

72. Specifically, and at all times relevant, Ms. Schack suffered from a disability, specifically, Hyperemesis Gravidarum, which impaired several of Ms. Schack's daily life activities and/or functions including eating and working.

73. In the alternative, Ms. Schack was regarded by Parallon as having such impairments.

74. At all times relevant, Parallon perceived Ms. Schack as having a disability pursuant to the ADA.

75. At all times relevant, however, Ms. Schack could perform the essential functions of her job with or without an accommodation.

76. Ms. Schack revealed her disability to her supervisor and the Human Resources department at Parallon and requested the reasonable accommodation of time off and/or shorter workdays.

77. Ms. Schack performed her work at a satisfactory level and met or exceeded the legitimate business expectations of Parallon.

78. Parallon discriminated against Ms. Schack by refusing to appropriately engage in a dialogue with her regarding disability accommodations, denying Ms. Schack's accommodation request, treating Ms. Schack differently, and less favorably, than similarly situated employees, and terminating and/or constructively terminating her employment.

79. Parallon would not have terminated and/or constructively terminated Ms. Schack's employment, or taken the other discriminatory actions against her, but for Ms. Schack's disability and/or requests for reasonable accommodations.

80. Any reasons given by Parallon for its treatment of Ms. Schack were pretextual, as Ms. Schack's work performance was excellent.

81. Ms. Schack's termination and/or constructive termination from employment occurred under circumstances that raise a reasonable inference of unlawful discrimination based upon her disability and/or requests for accommodations.

82. As a direct and proximate result of Parallon's actions, Ms. Schack has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

83. At all times material hereto, Parallon engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Ms. Schack so as to support an award of punitive damages.

84. The above-described acts by Parallon and employees of Parallon constitute disability discrimination in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008 ("ADA").

## COUNT IV: BREACH OF CONTRACT

85. Ms. Schack incorporates herein by reference the preceding paragraphs of this Amended Complaint.

86. For good and valuable consideration, Ms. Schack and Parallon entered into the aforesaid contract and agreement to exchange one job for the other.

87. Parallon breached the contract by failing to provide the promised job to Ms. Schack in accordance with the terms of the agreement.

88. As a direct and proximate result of Parallon's actions, Ms. Schack has suffered and will continue to suffer pecuniary loss.

89. The above-described acts by Parallon and employees of Parallon constitute breach of contract in violation of the common law of Virginia.

## COUNT IV: FRAUD IN THE INDUCEMENT

90. Ms. Schack incorporates herein by reference the preceding paragraphs of this Amended Complaint.

91. Parallon made a misrepresentation of fact to Ms. Schack in order to induce her into a contract that Parallon never intended to perform when Parallon told her that if she resigned from her position, it would employ her in the described Medical Records Department position.

92. At the time Parallon induced Ms. Schack to resign her position to enter into employment in the Medical Records Department, Parallon had no intention to perform its obligation to employ Ms. Schack in the Medical Records Department.

93. Ms. Schack, relying on Parallon's misrepresentation of material fact to her detriment, resigned from her current position with Parallon, which resulted in damage to Ms. Schack when Parallon refused to employ her in the Medical Records Department.

94. As a direct and proximate result of Parallon's actions, Ms. Schack has suffered and will continue to suffer pecuniary loss, emotional pain, suffering,

inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

95. At all times material hereto, Parallon's actions were reckless, wanton, and malicious so as to support an award of punitive damages.

96. The above-described acts by Parallon and employees of Parallon constitute fraud in violation of the common law of Virginia.

WHEREFORE, Plaintiff Clara Schack prays for judgment against Defendants Parallon Enterprises, LLC and Montgomery Regional Hospital, Inc., jointly and severally, and for equitable relief, compensatory damages, punitive and/or liquidated damages, together with prejudgment interest from the date of termination of the Plaintiff's employment, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

TRIAL BY JURY IS DEMANDED

Respectfully submitted,

CLARA SCHACK

/s/ Brittany M. Haddox
Brittany M. Haddox, Esq. (VSB #86416)
Thomas E. Strelka, Esq. (VSB #75488)
L. Leigh R. Strelka, Esq. (VSB #73355)
N. Winston West, IV, Esq. (VSB #92598)
Monica L. Mroz, Esq. (VSB #65766)
STRELKA LAW OFFICE, PC
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA 24011
Tel:  540-283-0802
brittany@strelkalaw.com

>thomas@strelkalaw.com
>leigh@strelkalaw.com
>winston@strelkalaw.com
>monica@strelkalaw.com
>*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 3rd day of February, 2020, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

>/s/ Brittany M. Haddox