IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CLARA SCHACK, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 7:19cv00767 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| PARALLON | ) |
| ENTERPRISES, LLC *et al.*., | ) By: Hon. Thomas T. Cullen |
| | ) United States District Judge |
| Defendants. | ) |

Plaintiff Clara Shack brought this case under the Americans with Disabilities Act, the Pregnancy Discrimination Act, and Virginia contract law, alleging that defendant Parallon Enterprises discriminated against her on the basis of a pregnancy-related disability and fraudulently induced her to resign her job with promises of a new one. The case is now before the court on defendant's motion for summary judgment. Because the undisputed evidence shows no contract and because Schack's absenteeism places her outside the protection of the laws she has invoked, the court will grant summary judgment to Parallon on all claims.

I.

On July 23, 2018, Plaintiff Clara Schack began employment at Montgomery Hospital as a part-time registrar, working 25 to 30 hours a week. (*See* ECF No. 46-1 at 18.) Within the first two weeks of her employment, on August 1, Schack called out of work. (*See id.* at 40.) This constituted an "occurrence" under Parallon's attendance policy. (*See id.*; ECF No. 44-3 at 1.) The accumulation of three occurrences within the first 90 days of employment with

Parallon is grounds for termination. (*See* ECF No. 44-3 at 2.) Other than this absence, the first month of Schack's employment passed without incident.

The events leading to this lawsuit began on August 30, 2018, when Schack informed Lisa Albert, her supervisor, and Suzanne Caldwell, Albert's supervisor, that she was pregnant. Schack's pregnancy brought on extreme nausea and dehydration (Hyperemesis Gravidarum), causing her to have trouble attending work. She arrived late on September 4 and called out of work entirely on September 6 and 13. (*See* ECF No. 44-1 at 42–43.) On September 13, Schack contacted Harriet Spencer-Bennett, the assistant director of human resources at Parallon and requested an accommodation for her pregnancy-related symptoms. Spencer-Bennett informed Schack that she needed to fill out a reasonable accommodation request form and provide a doctor's note certifying her need for an accommodation. (*See* ECF No. 44-10 at 1.) She also requested that Schack complete the relevant paperwork by September 24. Schack did not immediately provide a note and, following her conversation with Spencer-Bennett, called out of work on September 18, 24, 27, and October 1. (*See* ECF No. 44-1 at 50.)

Finally, on October 3, Schack provided a doctor's note to Parallon. The note was signed on September 28 and excused Schack from two weeks of work following that date. But Schack's doctor did not excuse her earlier absences. (*See* ECF Nos. 44-13; 44-1 at 51.) After Parallon received the note, it excused Schack from attending work (despite her having accumulated three occurrences under the attendance policy, rendering her eligible for termination) until her proposed return-to-work date of October 16. (*See* ECF No. 44-14.) The day before she was scheduled to return, Schack emailed Spencer-Bennett and informed her that she would not be able to return to work the next day and was attempting to obtain a

doctor's note extending her leave. (*See* ECF Nos. 44-1 at 55–57, 93–94; 44-15.) Two hours after sending that email, Schack again contacted Spencer-Bennett to tell her that she would, in fact, be returning to work, but would be requesting shorter shifts. (*See* ECF Nos. 44-1 at 55–57, 93–94; 44-16.) Spencer-Bennett informed Schack that she would need a doctor's note to support her request. (*See* ECF No. 44-17.) Schack never produced such a note.

Schack returned to work on October 16 but quickly began calling out again. She missed work on October 25 and 26 due to a family emergency unrelated to her medical condition, finding a replacement for the latter date but failing to inform her manager of such. This violated Parallon's policies. (*See* ECF No. 44-1 at 59–61.) Schack called out again on November 1 for unknown reasons not related to her medical condition. (*See id.* at 61–62.) Continuing this pattern, she called out of work on November 3 and 6, failing to abide by Parallon's policies on both occasions. (*See id.* at 61–62, 70.)

After these repeated absences, Schack received a "corrective action" notice from her supervisors. This written discipline informed her that she had missed scheduled shifts, failed to follow call-out procedures, had uncompleted training courses, and that her productivity was unsatisfactory on the shifts she had attended. (*See* ECF No. 44-18 at 1–2.) Some time after Schack received this corrective action, Jennifer Gillespie, the Regional Director at Parallon and Caldwell's supervisor (Schack's supervisor's supervisor's supervisor), received a call from Schack's father, who was upset about the corrective action. Gillespie recalls that the call was threatening in nature and that Mr. Schack informed her he was a local law enforcement officer and implied he would "make things right" on his daughter's behalf. (*See* ECF No. 44-19 at 42–44.)

Around this time, Gillespie also engaged plaintiff Schack in a conversation about finding a different position within Parallon more suited to her needs. There is some dispute about exactly how the conversation progressed, but eventually the two discussed Schack moving to a clerk position in the records department. (*See* ECF Nos. 44-1 at 78; 44-19 at 50–51.) There is much dispute about what happened next. Schack's filings allege that Gillespie promised her the clerk position outright. (*See* ECF Nos. 1 at 7–8; 46 at 16.) Her deposition, on the other hand, tells a much milder story. There, she says that Gillespie told her that the position would "be a lateral move" and "made it seem" like Schack would get the position. (ECF No. 44-1 at 79–81.) For her part, Gillespie denies having any conversation with Schack about helping her secure the clerk position.[1] (*See* ECF No. 44-19 at 56–58.)

After discussing the clerk position with Gillespie, Schack applied for it on November 10. Then, on November 12, Schack resigned from her position as a registrar. She alleges that Gillespie told her she had to resign in order to "move to" the clerk position, (*see id.* at 81–82), a contention Gillespie disputes, (*see id.* at 60–61). On November 13, Schack received an email from the recruiter for the clerk position requesting permission to contact Schack's prior manager to confirm approval of her application, a necessary step because Schack had been employed at Parallon for less than six months. (*See* ECF No. 44-22.) Schack texted Gillespie a screenshot of this email to "see what the next step is and if [she] needed to get approval." (ECF No. 46-27 at 7.) Gillespie responded, "I'll reach out!" (*Id.* at 8.) Gillespie testified that she reached out to Caldwell and asked her to contact the department hiring the clerk. (*See* ECF 44-19 at 57.) The hiring manager for the position cannot recall whether Caldwell reached out

---

[1] For purposes of this motion, the court adopts Schack's version, as outlined in her deposition testimony.

-4-

to her regarding Schack's application, (*see* ECF No. 46-33 at 20), and the recruiter for the position does not remember anyone reaching out regarding Schack's application, (*see* ECF No. 44-23 at 10). Schack herself never responded to the recruiter's email or reached out to her manager. (*See* ECF No. 44-1 at 90.) Because Schack never responded to the email giving the recruiter authorization to contact her manager, the recruiter automatically rejected her application for the clerk position. (*See id.* at 23–24.)

On February 3, 2020, Schack filed the instant suit alleging that Parallon breached its contract to give her the clerk position; fraudulently induced her to resign; and violated Title VII, the Americans with Disabilities Act, and the Pregnancy Discrimination Act. Parallon now moves for summary judgment on all claims.

II.

Under Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. *Celotex*, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477

U.S. at 323. If that burden has been met, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn*, 710 F.3d at 213 (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. The nonmoving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" *Glynn*, 710 F.3d at 213 (quoting *Anderson*, 477 U.S. at 252). The nonmoving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990) (citing *Anderson*, 477 U.S. at 248). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. *World-Wide Rights Ltd. P'ship v. Combe, Inc.*, 955 F.2d 242, 244 (4th Cir. 1992).

III.

Schack's complaint presents five claims: unlawful pregnancy discrimination under the Pregnancy Discrimination Act ("PDA"), unlawful disability discrimination under the Americans with Disabilities Act ("ADA"), failure to accommodate under the ADA, breach of contract, and fraud in the inducement. (*See* ECF No. 1 at 8–14.) Because the undisputed facts do not demonstrate the existence of any contract, the court will grant summary judgment in favor of Parallon on the breach of contract and fraudulent inducement claims. Additionally, the lack of any contract for future employment undermines Schack's claims for PDA and ADA discrimination. The alleged breach of contract is the only adverse employment action alleged in Schack's complaint; without it, her discrimination claims cannot survive. Even if she had pleaded alternative adverse employment actions, Schack has not shown that she could perform the essential functions of her position as a registrar and is therefore not protected by the ADA or PDA. This defect also undermines her failure-to-accommodate claim. Therefore, the court will grant Parallon's motion for summary judgment as to those claims as well.

**A. Plaintiff has not demonstrated the existence of any contract**

Schack has provided no evidence demonstrating the existence of an enforceable contract with Parallon or any fraud related thereto. Construing the evidence in the light most favorable to Schack, the record only shows that Gillespie offered to help Schack secure a lateral move within Parallon and failed to follow through. There is no evidence of anything resembling an offer and acceptance of the kind that would create a legally binding contract. Therefore, judgment will be granted to the defendant on the breach of contract and fraudulent inducement claims.

As both parties have indicated, the sum total of Schack's evidence purportedly proving the existence of the contract can be found in this exchange from her deposition:

> A: So she [Gillespie] said that she was going to reach out to the hiring manager and talk to her about the lateral move
>
> Q: Okay
>
> A: And then I didn't hear anything until I was prompted by Jenn Gillespie to fill out a resignation email. As I did so, I texted her and she said, go ahead and send it to Suzanne, and I will let the manager in the other department know and we'll go from there.
>
> Q: Okay, so she never told you that you were going to get that job, did she?
>
> A: That was her impression to me.
>
> Q: Okay, but she never told you that, did she?
>
> A: She said that I would do a lateral move.
>
> Q: She would talk to the manager about you doing a lateral move?
>
> A: Right, but she initiated that I would laterally move to that position
>
> Q: Okay, potentially, because she's not the hiring manager, right? She encouraged you to apply for this position, right?
>
> A: Right
>
> Q: She said, I will reach out to the person who is in charge and talk to them about you potentially making this move?
>
> A: Right, but she made it seem like I was going to get the lateral move.
>
> Q: Okay. That was your perception?
>
> A: That is how she made it out.
>
> Q: Okay. Did she tell you those words, you will get this job?
>
> A: She said that it will be a lateral move.

> Q: Okay, but did she tell you that you would get the job? I understand that it would be a lateral move, but did she ever tell you, you will get this job, Clara?
>
> A: She just said that it would be a lateral move, and she instructed me what to do, so I did so.
>
> Q: Okay. When did she instruct you and by what means to resign from your position?
>
> A: She instructed me – I sent my resignation on November 13th. She instructed me a few days before to fill out the email, send it to them, and then she would do the talking with the other manager to have a lateral move done.
>
> Q. Okay. Did she say why you needed to resign your position before you actually had your job offer?
>
> A: You would have to resign from that job in order to move to a new job.

(ECF No. 46-1 at 79–82.)

This is plainly insufficient to demonstrate the existence of any contract. Virginia law recognizes the elementary requirements for contract formation: offer, acceptance, and consideration. *See Montagna v. Holiday Inns, Inc.*, 269 S.E.2d 838, 844 (Va. 1980). Here, Schack cannot show the first requirement: an offer. An offer is a "manifestation of a willingness to enter into a bargain" and "identifies the bargained for exchange." *Chang v. First Colonial Sav. Bank*, 410 S.E.2d 928, 930 (Va. 1991). When analyzing whether a particular statement constitutes an offer to enter into a contract, "the law imputes to a person an intention corresponding to the reasonable meaning of his words and acts." *Marefield Meadows, Inc. v. Lorenz*, 427 S.E.2d 363, 365 (Va. 1993). Nothing in Schack's testimony resembles an offer for an exchange. She testified that Gillespie told her that the clerk position "w[ould] be a lateral move" and gave her the "impression" that she would get it. (ECF No. 46-1 at 79–81.) These are not the words of legally enforceable bargains. Given their reasonable meaning, Gillespie's

statements are simply descriptions of the clerk position and optimistic statements of Schack's chances at securing the position with Gillespie's help. But they do not manifest an intent to enter into a bargain wherein Schack would be given the clerk position in exchange for her resignation. *See Dodge v. Trustees of Randolph-Macon Woman's Coll.*, 276 Va. 1, 661 S.E.2d 801, 803 (Va. 2008) (An offer must be "clear, definite, and explicit" so as to "enable a court to give the contract an exact meaning."); *Judicial Inquiry & Review Comm'n of Virginia v. Elliott*, 630 S.E.2d 485, 496 (Va. 2006) (to create a contract, an offer must be "clear, definite, and explicit.").

Schack points the court to *Sea-Land Service, Inc. v. O'Neal*, 297 S.E.2d 647 (Va. 1982), arguing that it supports the existence of a contract in this case. But *Sea-Land* serves only to highlight Schack's lack of evidence. The dispositive fact in that case was the plaintiff's proof that her employer "promised her that, if she resigned from the one position, she would be employed in the other." *Sea-Land Serv.*, 297 S.E.2d at 650. This is precisely what Shack has not shown. There are no statements in the record from Gillespie that promise Schack the clerk position if she resigned from her registrar position. There are no statements offering Schack the clerk position at all. Without such clear, definite, and explicit statements, Schack cannot demonstrate a contract as a matter of law and therefore cannot prove breach or fraudulent inducement. *See Ware v. Scott*, 257 S.E.2d 855, 857 (1979) (recognizing that fraudulent inducement is limited to formation or performance of a contract).

### B. Plaintiff cannot demonstrate the elements of an ADA discrimination claim

Schack's second claim is that Parallon discriminated against her on the basis of her disability— Hyperemesis Gravidarum—in violation of the ADA. Disability discrimination may be proven through direct and indirect evidence or through the *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973), burden-shifting framework. *See Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015). Whichever route the plaintiffs takes, she must prove "(1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability." *EEOC v. Stowe–Pharr Mills, Inc.*, 216 F.3d 373, 377 (4th Cir. 2000).

The first two elements require some explanation. A person can show a disability under the ADA in two ways. First, a plaintiff can show that they have "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Second, a plaintiff can show that they have a "perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). A plaintiff is a "qualified individual" under the second element of the test if she, "with or without reasonable accommodation, can perform the essential functions of the employment position that [she] holds or desires." 42 U.S.C. § 12111(8). In other words, a qualified individual is one who can perform the basic requirements of their job if given a reasonable accommodation.

As noted above, Schack's ADA discrimination claim fails because she cannot demonstrate any adverse employment action and therefore cannot prove the third element of the test. The only adverse employment event alleged in Schack's complaint is the breach of contract and fraudulent inducement with respect to her resignation. Because she cannot show breach or fraud as a matter of law, she also cannot show disability discrimination as a matter of law.

But even putting the third element of the test aside, Schack cannot make out an ADA discrimination claim because she has not shown that she is a qualified individual. Specifically, her inability to attend work regularly rendered her incapable of performing the essential functions of her job. To prove she is a qualified individual—a necessary element of her ADA discrimination claim—Schack needed to demonstrate that, "with or without reasonable accommodation," she could "perform the essential functions" of her job as a registrar. 42 U.S.C.A. § 12111(8). A job function is essential if it "bear[s] more than a marginal relationship to the job at issue." *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 213 (4th Cir. 1994). Attending one's job is the paradigmatic example of an essential job function. *See Tyndall*, 31 F.3d at 213; *Carr v. Reno,* 23 F.3d 525, 529–30 (D.C. Cir. 1994); *Walders v. Garrett*, 765 F. Supp. 303, 313 (E.D. Va. 1991). For that reason, it is a general rule that "[a]n employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA." *Tyndall*, 31 F.3d at 213. There is no reason to deviate from this rule with respect to Schack's position as a registrar, which required her to be physically present at the hospital.

Schack was unable to meet the attendance requirements for her position. Of the approximately 70 shifts she was scheduled to work at Parallon, she missed part or all of 27. (*See* ECF No. 44-1 at 98–99.) Of the 33 shifts between discovery of her pregnancy and resignation, she missed part or all of 12.[2] (*See id.* at 42–70.) An individual who attends her job

---

[2] This is the most generous estimation of Schack's attendance possible on the record before the court. Schack herself provided testimony that she was only scheduled to work "37 or 38" days for Parallon and missed 27 of those days. (*See* ECF No. 44-1 at 98–99.) By that accounting, Schack was absent for part or all of 70% of her shifts.

less than 70% of the time is not performing the essential functions of that job. *See Posante v. Lifepoint Hosps., Inc.*, No. 4:10-CV-00055, 2011 WL 3679108, at *5 (W.D. Va. Aug. 23, 2011) (holding that a worker who missed 20% of his shifts was not performing the essential functions of the position). In fact, the record shows that Schack's regular absences were sufficient to justify termination based on Parallon's attendance policy. (*See* ECF Nos. 44-1 at 52–53; 44-3 at 1–2.) No matter the accommodations Parallon provided her, Schack would have been unable to do her job because she would not have been present at her job.[3] Schack's filings in this court make no argument on this point, entirely ignoring both the law and defendant's arguments on the qualified-individual issue. Ultimately, Shack's absenteeism prevents her from bringing an ADA claim because she is not a "qualified individual."

Because Schack has not provided the court with any evidence of an adverse employment action against her and because she was routinely absent from her job—an issue that could not be cured by any accommodation—the court will grant summary judgment in favor of Parallon on Schack's disability discrimination claim.

### C. Plaintiff cannot demonstrate the elements of a PDA discrimination claim

Schack's PDA claim fails for the same reasons as her ADA discrimination claim. Similar to disability discrimination, a *prima facie* case of pregnancy discrimination requires a plaintiff to show "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse

---

[3] It would be no response for Schack to claim that Parallon could have provided her with time off as an accommodation. To be a qualified individual under the ADA, an individual must be able to perform the elements of the job with accommodation. Thus, a person cannot be a qualified individual if the necessary accommodation is that they be excused from performing their job. *See Waggoner v. Olin Corp.*, 169 F.3d 481, 484 (7th Cir. 1999) ("We think it also fair to conclude that in most instances the ADA does not protect persons who have erratic, unexplained absences, even when those absences are a result of a disability.").

employment action; and (4) that similarly situated employees outside the protected class received more favorable treatment." *Gerner v. Cnty. of Chesterfield*, 674 F.3d 264, 266 (4th Cir. 2012) (quoting *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)).

Schack fails the second and third elements of the test: the third because she has not shown any adverse employment action, and the second because her absenteeism rendered her job performance unsatisfactory.

### D. Plaintiff cannot demonstrate the elements of a failure-to-accommodate claim

Schack's final claim, failure to accommodate under the ADA, also falters on her absenteeism. To establish a *prima facie* case of failure to accommodate under the ADA, a plaintiff must show that: (1) she had a disability under the ADA; (2) her employer had notice of his disability; (3) she could perform the essential functions of the job with reasonable accommodations; and (4) her employer refused to make reasonable accommodations. *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001). The ADA does not define "reasonable accommodations," but lists making facilities accessible to disabled employees and "job restructuring, part-time or modified work schedules" as examples. 42 U.S.C. § 12111(9) (2010).

The first problem with Schack's accommodation claim is obvious in light of the foregoing analysis: she cannot show that she could perform the essential functions of the job. Her failure-to-accommodate claim, like the others, founders on her chronic absenteeism.

But even if Schack could show that an accommodation would have allowed her to perform the essential functions of her job, she still could not make out a failure-to-accommodate claim. The EEOC's interpretive guidance for the ADA clarifies that, under the

-14-

second prong of the test, where an employee's need for an accommodation is not obvious, an employer may require that the employee provide documentation of their need for an accommodation. *See* 29 C.F.R. § Pt. 1630, App. Failure to provide such documentation where it is reasonably required precludes a failure-to-accommodate claim. *See Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 812 (6th Cir. 2020); *Ward v. McDonald*, 762 F.3d 24, 32 (D.C. Cir. 2014).

In line with this guidance, Parallon's ADA implementation procedures generally require a supporting physician's statement for reasonable accommodation requests. (*See* ECF No. 46-20.) Schack did not provide such a statement to support her request for shorter shifts.[4] After she requested shorter shifts, she was informed that she needed to fill out a request form and provide a note from her doctor detailing the kind of accommodation she required. (*See* ECF Nos. 44-1 at 45–46; 44-17.) But Schack never provided a note from her doctor addressing her need for an accommodation. In fact, Schack testified in her deposition that her physician "wouldn't give" her a note to support her ADA request. (*Id.* at 125.) While it is difficult to separate this issue from Schack's inability to attend work—as it is obvious that shorter shifts or a different position would not have accommodated her disability because it precluded attendance of any kind—her failure to document her need for an accommodation independently bars her failure-to-accommodate claim.

In sum, Schack cannot show that a reasonable accommodation would have allowed her to perform the essential functions of her position, and she did not provide Parallon with

---

[4] Schack argues that Parallon offered her the clerk position as a reasonable accommodation and did not request any documentation to support her disability with respect to it. (*See* ECF No. 46 at 33.) But, as explained above, the record does not show that she was offered the clerk position, only that Gillespie discussed it as a possible lateral move.

documentation of her disability after its reasonable request for such. Because she has failed to satisfy the second and third elements, the court will grant summary judgment in favor of Parallon for Schack's failure-to-accommodate claim.

## IV.

Schack's claims fall together. Her breach of contract claim undergirds both of her discrimination claims. When it falls because the record shows nothing resembling a contract, the other claims collapse as well. Even if it did not, the discrimination claims fail for the independently dispositive reason that Schack's inability to attend her job places her outside of the ADA's and PDA's protections. This, in turn, also vitiates her ADA failure-to-accommodate claim. And even if the failure-to-accommodate claim could survive Schack's absenteeism, the fact that she did not provide Parallon with documentation of her need for an accommodation would have the same effect. For those reasons, the court will enter judgment for Parallon on all of Schack's claims.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 8th day of February, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE